FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

00 OCT 18  PM 1:34

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| KENNETH SAMUELS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 99-BU-3259-E |
| | ) | |
| SYLACAUGA CITY BOARD OF | ) | |
| EDUCATION, | ) | ENTERED |
| | ) | |
| Defendant. | ) | OCT 18 |
| | ) | |

## Memorandum Opinion

In this action, Plaintiff Kenneth Samuels contends that his former employer, Defendant Sylacauga City Board of Education ("Defendant" or "Board"), discriminated against him on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); and 42 U.S.C. § 1981 ("Section 1981"). Plaintiff claims that Defendant is liable for subjecting him to different terms and conditions of employment and by ultimately terminating his employment because of his race. Now before the Court is Defendant's motion for summary judgment on all claims (Doc. No. 18). The parties have filed evidence and briefs[1] in support of their respective

---

[1] The Court here notes its annoyance with counsel for both parties in that the recitation of facts in their respective briefs clearly do not satisfy the requirements of Appendix A, which sets forth the format counsel were expected to follow for their respective submissions. In particular, Defendant's brief does not contain numbered fact statements and does not give a record citation for each individual assertion, choosing instead to have one citation serve for three and four sentences at a time. This appears to have perhaps confused Plaintiff's counsel, who claims that

29

positions on that motion. In addition, Plaintiff has filed a motion to strike five affidavits submitted by Defendant in support of the motion for summary judgment, on the ground that such affidavits allegedly contain hearsay. (Doc. No. 23). Upon consideration, the Court concludes that Plaintiff's motion to strike is due to be DENIED and that Defendant's motion for summary judgment is due to be GRANTED.

## I. SUMMARY JUDGMENT STANDARDS

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it

---

each factual assertion made in the Defendant's brief that is not immediately followed by a citation is unsupported by evidence, notwithstanding that it should have been apparent to the careful reader that defense counsel was using a single cite to refer to each sentence following the preceding cite. However, Plaintiff's counsel should not have had to even make that deduction, given that the Court's order specifically stating that a citation is to be provided for each individual assertion of fact.

Further, because Defendant's initial brief contains no numbered statements of fact, Plaintiff's counsel was forced to devise her own system, whereby she counted the number of paragraphs and sentences and then designated each sentence accordingly, e.g., "Paragraph Seventeen – Sentence Two." Plaintiff's counsel then proceeded to repeat the error of her counterparts by failing to use numbered statements for the factual assertions in support of Plaintiff's position, leading Defendant's Reply Brief to use the "paragraph-sentence" numbering system to respond to the Plaintiff's statement of facts. The Court has been able to follow this system. But it would have greatly preferred that the parties had simply followed the Court's order and spared the Court, as well as each other, the tedious paragraph and sentence numbering exercise. In the future, such briefs will not be accepted.

believes demonstrate the absence of a genuine issue of material fact. Celotex, at 323. See also Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its to initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 523 (11th Cir. 1994). In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. Rooney v. Watson, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing Hale v. Tallapoosa Co., 50 F.3d 1579, 1581 (11th Cir. 1995)). The standards for summary judgment are not applied any differently in employment discrimination cases than they are in other kinds of cases. See Chapman v. AI Transport, ___ F.3d ___, ___, 2000 WL 1459477, *8 (11th Cir. 2000) (en banc).

## II. BACKGROUND[2]

Plaintiff, an African-American male, was employed by the Board as a math teacher at Sylacauga High School ("SHS") in Sylacauga, Alabama, during the 1996-97 and 1997-98 school years. Plaintiff was solicited, interviewed, and initially recommended for this position by the Principal of SHS, Jack Housch, a white male. Several weeks after Plaintiff was hired by the Board, Housch also arranged for Plaintiff's wife, Miriam Samuels, to be hired as an instructional assistant in the physical education department at SHS. After Plaintiff was hired, he was asked to help coach a number of SHS athletic teams. Plaintiff agreed, so in addition to his teaching duties, he was a coach for junior varsity football,

---

[2]"The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the record. These are the 'facts' for summary judgment purposes only. They may not be the actual facts. See Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994)." Underwood v. Life Ins. Co. of Georgia, 14 F.Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

cross-country, and an assistant coach for girls' varsity basketball, which he coached with his wife. Plaintiff received a supplement to his teaching salary for taking on these coaching duties.

Under the Alabama Teacher Tenure Act, §§ 16-24-1 et seq., Ala. Code 1975, a certified teacher automatically attains tenure or "continuing service status" if he or she has "served under contract as a teacher in the same county or city school system for three consecutive school years and shall thereafter be re-employed in such county or city school system the succeeding school year." Section 16-24-2(a), Ala. Code 1975. Thus, that Act requires that after three consecutive years of teaching in a system, the teacher either must be granted tenure or terminated. See Jones v. Ingram, 585 So.2d 64, 66 (Ala. Civ. App. 1991); Haas v. Madison County Bd. of Educ., 380 So.2d 873, 876 (Ala. Civ. App. 1980). However, on or about April 20, 1998, near the end of Plaintiff's second year at SHS, 1998, Housch told Plaintiff that he was going to recommend that Plaintiff's contract not be renewed at the end of the school year. At that meeting, Housch did not supply Plaintiff with a reason for this decision. However, in his deposition and an affidavit, Housch claims that he recommended Plaintiff's contract be non-renewed because Housch allegedly believed, based on his personal observations of Plaintiff in the classroom, that Plaintiff inadequately supervised his students and had deficient interpersonal skills in dealing with students.

Around that same time, Housch also informed Plaintiff's wife that her position was being eliminated for budgetary reasons and that her contract, therefore, would not be renewed, either. At some point thereafter, though, Housch asked Plaintiff's wife whether she would be interested in another position at the school that would be coming available, but she said that she was not. Housch offered Plaintiff and his wife the option of resigning instead of having their contracts officially non-renewed by the Board, but they declined. Therefore, Housch recommended to the Sylacauga Superintendent of

Education, Dr. Glenn Doran, that the contracts of Plaintiff and his wife not be renewed. Doran, in turn, made this same recommendation to the Board, which voted unanimously to approve it.[3] Plaintiff and his wife were thus terminated. Subsequently, the Board hired Lee Patterson, also an African-American male, to take Plaintiff's position as a math teacher. Matthew Hubbard, a white male who was already employed as a science teacher at SHS, assumed the responsibilities of coaching the girls' varsity basketball team.

After filing a charge of discrimination with the Equal Employment Opportunity Commission, Plaintiff filed this action against the Board, alleging race discrimination in violation of Title VII and Section 1981.[4] Plaintiff claims that the Board is liable because his employment was terminated and a number of other lesser actions were taken against him, allegedly on the basis of race. Defendant has now filed the instant motion for summary judgment on all claims.

## III. DISCUSSION

Under Title VII, it is unlawful for an employer "to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms,

---

[3]It is undisputed that neither the Board nor Dr. Doran independently investigated whether Plaintiff should have his contract non-renewed. Rather, according to the evidence, Dr. Doran simply relied on Housch's recommendation, and the Board members, in turn, relied on Dr. Doran's. Defendant has submitted affidavits from each Board member stating that his or her decision not to renew Plaintiff's contract was based entirely on Dr. Doran's recommendation and not on any racial considerations. Plaintiff claims in its motion to strike (Doc. No. 23) that these affidavits contain hearsay and are due to be excluded because none indicate that any of the Board members had any personal knowledge of the shortcomings in teaching ability alleged by Housch as the basis for his recommendation to non-renew Plaintiff's contract. Plaintiff's motion is entirely without merit. These affidavits are not offered to prove Plaintiff's alleged substantive teaching deficiencies, nor are they offered to establish what Housch believed about Plaintiff's abilities. The affidavits merely indicate, rather, that the Board members based their decision solely on Dr. Doran's recommendation and not out of a racially discriminatory animus. Plaintiff's motion to strike will be denied.

[4]While Plaintiff suggested in his complaint that his wife was also subjected to racial discrimination by having her contract non-renewed, she is not a party to this lawsuit.

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 guarantees to all persons in the United States "the same right ... to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Following the passage of the Civil Rights Act of 1991, the term "make and enforce contracts" is broadly defined as including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Claims of disparate treatment on the basis of race under Title VII and Section 1981 require the same proof to show liability. Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). Thus, the Court will address Plaintiff's Title VII claims with the express understanding that the analysis applies to his section 1981 claims as well. See id. First, the Court will examine Defendant's argument that it is entitled to summary judgment on Plaintiff's claim that he his employment was terminated on the basis of race, and then the Court will proceed to discuss separately the other actions Plaintiff claims were taken against him because of race.

## A. Termination Claim

Plaintiff attempts to prove that he was terminated based on race by using circumstantial evidence.[5] When a plaintiff offers circumstantial evidence to prove a Title VII discrimination claim, courts use the analytical framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). Under this framework, the plaintiff must first establish a prima facie case of discrimination, which creates a presumption of discrimination. The employer must then produce sufficient evidence to

---

[5]Plaintiff does not contend that he might offer direct evidence or statistical evidence of race discrimination, the other avenues by which he might have attempted to prove his Title VII discrimination claim. See Standard, 161 F.3d at 1330.

indicate that it took the employment action for one or more legitimate, nondiscriminatory reasons.  If the employer does so, the presumption of discrimination drops from the case, and the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are merely a pretext for unlawful discrimination.  See McDonnell Douglas, 411 U.S. at 802-05; Burdine, 450 U.S. at 252-256.

Defendant argues that Plaintiff cannot establish a prima facie case, which requires "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion . . . ."  O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996) (quoting Teamsters v. United States, 431 U.S. 324, 358 (1977)). In this circuit, a plaintiff claiming that he was unlawfully discharged based on race establishes a prima facie case by proving the following elements: (1)  he is a member of a protected class, (2) was qualified for the position held, (3) was discharged, and (4) either that he was replaced by a person outside of the protected class or that a person outside of the class with equal or lesser qualifications was retained.  Lee v. Russell County Bd. of Educ., 684 F.2d 769, 773 (11th Cir. 1982).  Defendant assumes for purposes of its motion for summary judgment that Plaintiff can establish the first three elements of a prima facie case.  Defendant argues, however, that Plaintiff cannot satisfy either formulation of the fourth element.

Plaintiff does not dispute that the Board hired another African American male to assume Plaintiff's responsibilities in math teacher position at the high school.  Plaintiff nonetheless argues that a jury question is presented regarding whether he was "replaced" by a non-African-American.  In support, Plaintiff points to Defendant's admission that an existing white employee, science teacher Matthew Hubbard, took over the coaching duties of the girls' varsity basketball team, which were shared by Plaintiff and his wife prior to the non-renewal of their contracts.

An employee's position and job responsibilities are, of course, relevant to

determining who replaced him.  Hawkins v. Ceco Corp., 883 F.2d 977, 982 (11th Cir. 1989).  Where an "employee's position is clearly delineated and responsibilities are well defined," the Eleventh Circuit Court of Appeals has explained, an examination into who replaced the employee "should focus on the person that physically replaced the employee or consider whether that job title was actually filled."  Id.  In addition, courts have recognized that when an employee's duties are assumed by more than one person, the examination is of the relevant characteristic of the persons assuming the employee's primary or predominant functions to see if the employee was "replaced" by a person outside the protected classification.  See Beery v. University of Oklahoma Bd. of Regents, 203 F.3d 834 (table), 2000 WL 27692, **2 (10th Cir. 2000).  Thus, in Pitasi v. Gartner Group, 184 F.3d 709, 714-17 (7th Cir. 1999), the court held that the plaintiff bringing a claim of age discrimination had failed to raise a genuine issue of fact that he was replaced by a substantially younger new hire, who did not assume any of the plaintiff's "primary" job responsibilities.  Similarly, in Brown v. CSC Logic, Inc., 82 F.3d 651, 656 n.16 (5th Cir. 1996), the court rejected that there was sufficient evidence to support the plaintiff's contention that he was replaced by a substantially younger worker, where that worker's duties were the same both before and after the plaintiff's termination, with the exception of "two incidental matters."  See also Blackburn v. American Telephone and Telegraph System, 925 F.Supp. 762, 768 (N.D. Ga. 1995) (holding that evidence was insufficient to find that ADEA plaintiff was "replaced" by a particular younger employee, even if "some of his duties" were given to the younger employee, where his "primary function" was assigned to others in management); McGovern v. Transamerica Ins. Finance Corp., 854 F.Supp. 393, 399 (D. Md. 1993) (holding that ADEA plaintiff was not "replaced" by younger employee who assumed only 5% of the plaintiff's duties).

This Court would agree that where it might be reasonably inferred that a plaintiff teacher's coaching responsibilities were considered a predominant or basic job function,

evidence that the plaintiff was replaced in those coaching duties by a person outside the protected class would satisfy the fourth element of a prima facie case. Cf. Covington v. Beaumont Independent School Dist., 714 F.Supp. 1402 (E.D. Tex. 1989) (holding that reassignment of white and Hispanic high school varsity football coaches to sophomore football staff in order to replace them with two black coaches violated the Equal Protection Clause); Lee v. Ozark City Bd. of Ed., 517 F.Supp. 686, 689 (M.D. Ala. 1981) (assuming prima facie case was met where an African-American varsity football assistant coach/physical education teacher had his contract non-renewed and one of the newly-hired varsity football assistant coaches was white). Here, however, it is undisputed that Plaintiff was hired solely in his capacity as a math teacher, not because of any role he might play as a coach. Indeed, the evidence shows that Plaintiff was not required to be a coach at all and that he merely did so voluntarily after being asked to do so after he was hired. It is also undisputed that Matt Hubbard was an existing employee whose primary job responsibility, teaching science, was not something that Plaintiff was qualified to do. Further, Plaintiff was only the assistant coach of girls' varsity basketball, not the head coach, and the evidence is undisputed that the decision not to renew the contracts of Plaintiff and his wife had nothing to do with a lack of coaching success. In fact, Plaintiff and his wife had just coached the girls' basketball team to the Alabama state Class 5A title in February 1998. The Court concludes that, under the circumstances of this case, the evidence is simply insufficient to infer that Hubbard "replaced" Plaintiff, for purposes of a prima facie case.

Next, Plaintiff attempts to establish that a less qualified white employee was retained, thus indicating racial discrimination. In particular, Plaintiff claims that an untenured white science teacher, one Mr. Griffith, had student supervision control problems that were worse than any he might have had and that Griffith's employment contract was nonetheless renewed by the Board in the year that Plaintiff was terminated.

It is undisputed that after the 1997-98 school year, Plaintiff's second at SHS, his contract was non-renewed while Griffith, who had then completed just his first year at the school, was retained.  The evidence also shows, however, that after the following school year, Griffith's second at SHS, Housch informed Griffith that he, like Plaintiff, would not be renewed.  There is no question that Griffith's employment ended following the 1998-99 school year.[6]

In order to support an inference of race discrimination on his prima facie case, the evidence must be sufficient to show that the white employee who was allegedly treated more favorably was "similarly situated" to the Plaintiff. . See Lathem v. Department of Children and Youth Services, 172 F.3d 786, 792-93 (11th Cir. 1999); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).  See also Marshall v. Western Grain Co., 838 F.2d 1165, 1168 (11th Cir. 1988) ("In employment discrimination cases, the question of whether the plaintiffs are similarly situated with non-minority members is crucial.")  In determining whether employees are "similarly situated," the relevant inquiries are "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways," Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999) (citation omitted), and "whether the employer subjected them to different employment policies." Lathem, 172 F.3d at 793.

Housch testified that it is the school's policy to give new teachers at least two years on the job before they are considered for non-renewal, unless the teacher does something illegal or immoral.  Plaintiff has offered nothing to contradict that such is, in fact, school policy.  Given that, the Court concludes, even assuming Plaintiff and Mr. Griffith both had similar classroom control problems and that such was known to Housch in April

---

[6]It appears that after being informed by Housch that his contract would not be renewed following the 1998-99 school year, Griffith, unlike Plaintiff, accepted Housch's offer to allow him to resign instead of being non-renewed by the Board.

1998, which is not at all clear, Plaintiff has failed to demonstrate that when he was terminated, he was similarly situated to Griffith for purposes of assessing whether their contracts should be non-renewed under school policy. Moreover, when Griffith was similarly situated, after his second year of employment at SHS, he was not treated more favorably than Plaintiff was. Indeed, Griffith was treated exactly the same, as Housch indicated to Griffith that his employment contract would not be renewed after that year. The Court concludes that Plaintiff has failed to establish a prima facie case on his claim that he was terminated based on race, in violation of Title VII and Section 1981. Accordingly, Defendant's motion for summary judgment will be granted on such claim.

### B. Other Actions by the Employer

Plaintiff also seeks to recover under Title VII and Section 1981 based on a number of other actions that occurred prior to his discharge. More specifically, Plaintiff asserts that (1) he was assigned to teach geometry instead of algebra; (2) he was not initially provided with a sufficient number of textbooks for some of his geometry classes and, after Housch immediately ordered 40 to 60 textbooks for him, one of his classes still had to use three different editions; (3) two of the five classes he was assigned were substantially larger, about 35 students each, than the classes taught by white math teachers, who had about 20 each; (4) Housch denied his request for a classroom computer; (5) although Plaintiff agreed to help coach junior varsity football soon after he was hired, he was not immediately placed on a 10-month employment contract, unlike a number of newly hired whites who were coaching varsity football; (6) after Plaintiff and his wife coached the girls' varsity basketball team to the Alabama state Class 5A title in 1998, Housch and other administration officials failed to personally congratulate Plaintiff or his wife and delayed for several days publicizing the victory over the school public address system and the marquee in front of the school; and (7) Housch once called Plaintiff "courch" instead of "coach," which Plaintiff says was meant as an insult, suggesting that he did not know

what he was doing.  Defendant argues that it is entitled to summary judgment on these claims because none of these examples of alleged disparate treatment are substantial enough to support an employment discrimination claim under Title VII or Section 1981. The Court agrees.

As noted previously, to establish a prima facie case of disparate treatment under the McDonnell Douglas rubric, a Title VII plaintiff must show that he was subjected to adverse employment action."  E.E.O.C. v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000); Holifield, 115 F.3d at 1562.  "An adverse employment action is an ultimate employment decision such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.' " Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000) (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3rd Cir. 1997) (citation and internal marks omitted)).  "Conduct that falls short of ultimate employment decision must meet some threshold level of substantiality . . . to be cognizable [under Title VII]," Id. (quoting Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1456 (11th Cir. 1998).[7]

---

[7]It should be noted that both Gupta and Wideman address the question of what qualifies as an "adverse employment action" for purposes of the anti-retaliation provision of Title VII, 42 U.S.C. § 2000e-3(a), rather than Title VII's substantive provision prohibiting discrimination based on race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2(a).  However, the Court concludes that there is no statutory basis upon which to distinguish the types of employment actions cognizable under the anti-retaliation versus the substantive anti-discrimination provisions of Title VII.  See Robinson, 120 F.3d at 1300-01 (incorporating the adverse job action requirement of 42 U.S.C. § 2000e-2 to the anti-retaliation context); McDonnell v. Cisneros, 84 F.3d 256, 258 (7th Cir. 1996) ("The language of 'materially adverse employment action' that some courts employ in retaliation cases is a paraphrase of Title VII's basic prohibition against employment discrimination found in 42 U.S.C. § 2000e-2(a)(1) and (2)").  Also cf. See Drake v. Minnesota Mining & Mfg. Co., 134 F.3d 878, 886 (7th Cir. 1998); Gunnell v. Utah Valley State College, 152 F.3d 1253, 1264 (10th Cir. 1998); Ray v. Henderson, 217 F.3d 1234, 1245 (9th Cir. 2000); Morris v. Oldham County Fiscal Court, 201 F.3d 784, 791-92 (6th Cir. 2000) (each holding that a hostile work environment based on retaliation is actionable under the anti-retaliation provisions of Title VII, based on the fact that the creation of

Thus, "not everything that makes an employee unhappy is an actionable adverse action." Doe v. Dekalb County School Dist., 145 F.3d 1441, 1449 (11th Cir. 1998) (quoting Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996). "Any adversity must be material; it is not enough that [the employer's action] imposes some de minimis inconvenience or alteration of responsibilities." Doe, 145 F.3d at 1453 (footnote omitted). "Otherwise, . . . every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." Id. at 1449 (quoting Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996). Whether an action is sufficient to constitute an adverse employment action must be determined on a case-by-case basis, using both a subjective and an objective standard. Gupta, 212 F.3d 587 (citing Doe, 145 F.3d at 1448-49).

Some matters about which Plaintiff complains are patently not adverse employment actions. Most obvious within this category are his claims that Housch once called him "courch" and that school administrators allegedly failed to properly acknowledge that the girls' basketball team won the state championship. "Title VII[ ] is neither a 'general civility code' nor a statute making actionable the 'ordinary tribulations of the workplace.'" Gupta, 212 F.3d at 587 (quoting Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir.1999)). In addition, the precedent in this circuit further indicates that Plaintiff cannot recover based on his allegations regarding class assignments. See id. at 588 (finding that the plaintiff's teaching assignments did not constitute an adverse employment action, where there was no evidence that she was entitled or particularly deserving to teach the classes she desired, nor that other untenured professors got to "cherry pick" the classes they taught). The Court also concludes that Plaintiff's claims that he was not provided with a computer for his classroom, which he

---

such a work environment based on race, gender, etc., is prohibited by the statutory language of 42 U.S.C. § 2000e-2(a)).

acknowledges was not a necessity to perform his teaching duties, and that students in one of his three geometry classes had to use different editions of a textbook reflect only de minimis inconveniences, rather than material differences in working conditions, and are thus not actionable under Title VII or Section 1981. Accordingly, summary judgment will be granted on each of these claims.

The Court also agrees that summary judgment is due to be granted on Plaintiff's claim that he was not immediately placed on a 10-month employment contract. Plaintiff contends that upon his hire, he was placed on a 9-month contract, notwithstanding that he subsequently agreed to help coach junior varsity football, while a number of newly-hired white teachers who had coaching duties were at once placed on a 10-month contract. Plaintiff thus suggests that he was treated less favorably than these white would-be comparators. However, the evidence suggests that when those other white teachers were hired, they were slated to coach varsity football, unlike Plaintiff, who agreed to coach junior varsity football only after he was hired. Therefore, the white coaches were not truly similarly situated to Plaintiff, as Plaintiff himself conceded in his deposition. Moreover, Plaintiff acknowledges that once he brought it to Housch's attention that he was coaching and was not on a 10-month contract, Housch immediately corrected the problem. The Court concludes that the evidence is simply insufficient to indicate that the initial failure to place Plaintiff on a 10-month contract resulted from a racially discriminatory animus.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that Plaintiff's motion to strike (Doc. No. 23) is due to be DENIED and Defendant's motion for summary judgment (Doc. No. 18) is due to be GRANTED. In accordance with Federal Rule of Civil Procedure 56, the Court has determined that there is no genuine issue of material fact and that Defendant is entitled to judgment as a matter of law on each of Plaintiff's claims. Therefore,

Plaintiff's claims shall be DISMISSED, with prejudice.  A separate order will be entered.

DONE and ORDERED this /8th day of October, 2000.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE